# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## STUART AND OTHERS v. HOFFMAN & CO. AND OTHERS.

### June 11, 1908.

1. COUNSEL FEES—*Allowance by Court.*—Generally the power of a court to require one party to contribute to the fees of counsel of another party must be confined to cases where the plaintiff, suing in behalf of himself and others of the same class, discovers, creates or preserve a fund which enures to the common benefit of all. The power is very capable of abuse, and hence should be cautiously exercised. It .will not be exercised where, in a case like the one at bar, every party in interest was represented by counsel of his own selection.

Appeal from a decree of the Chancery Court of the city of Richmond, refusing the prayer of a petition to have counsel. fees paid out of a fund under the control of the court.

*Affirmed.*

The opinion states the case.

*Wm. C. Stuart, A. W. Patterson, Geo. Bryan,* and *Samuel A. Anderson,* for the appellants.

*Munford, Hunton, Williams & Anderson,* and *J. R. Tucker,* for the appellees.

KEITH, P., delivered the opinion of the court.

The original bill in this case was filed by certain supply lien creditors of the William R. Trigg Company, shipbuilders, suing on behalf of themselves and all other creditors similarly situated, alleging the insolvency of the defendant company, and

asking the appointment of a receiver to take charge of its assets and administer the same under the orders of the court. Thereupon, numerous other supply liens were filed, and among them one by the Bucyrus Company, of Milwaukee, Wisconsin. At the time the bill was filed and the receiver appointed, the Trigg Company was engaged in the construction of a number of vessels for the United States, among them a certain sea-going suction dredge at a cost of $252,375. The Bucyrus Company furnished the Trigg Company, to be used in the construction of this vessel, certain pumping machinery, at a cost of $32,050. The rights of the parties growing out of this contract were the subject of controversy between the receiver and the creditors of the Trigg Company, and the Bucyrus Company, the latter claiming title to the pumping machinery, and therefore to the whole of its proceeds, which claim was controverted by the receiver and creditors of the Trigg Company. The United States Government filed a stipulation in the case, claiming the unfinished vessel and all machinery on hand applicable to its construction, agreeing to protect the creditors of the Trigg Company in any claim they might have in or to the property which was superior to the rights of the government; and thereupon an order was entered, directing the receiver to surrender possession of the unfinished dredge and certain materials applicable thereto, including the pumping machinery in controversy, to the United States, or their authorized agents. Subsequently a balance of $14,266.67 was ascertained to be due from the United States on this pumping machinery, and it was this sum, in the hands of the United States Government, which was the real subject of controversy in the case of *Trigg Co.* v. *Bucyrus Company,* reported in 104 Va. 80, 51 S. E. 174, from which the foregoing statement has been condensed.

The chancery court decided in favor of the Bucyrus Company, so that under that decree it took the entire fund in controversy, to-wit: $14,266.67. The creditors affected by this decision desiring to take an appeal from it, applied to the chancellor, who entered an order as follows:

"It appearing to the court that it is to the interest of the creditors of the William R. Trigg Company that said decree should be appealed from, and that it is proper that the expenses connected with said appeal should be borne by the fund in the hands of the receiver or under the control of the court in this cause, it is, on motion of said receiver, ordered that he be, and he hereby is, authorized and directed to take the necessary steps to procure an appeal from said decree at the expense of said fund."

Accordingly, a petition for an appeal was prepared on behalf of the Trigg Company and others, and presented to this court. The petition is signed by Bickford & Stuart, Whitehurst & Hughes, J. Jordan Leake, as attorney for the Trigg Company, and Lilburn Myers, receiver; by A. W. Patterson, George Bryan, and T. C. Gordon. Bickford & Stuart seem to have represented the greater number of clients; and the certificate of error required in our practice was signed by William C. Stuart, of that firm.

An appeal was allowed, and, the rules of court permitting only two counsel to argue upon each side, the case was presented in this court by Stuart and Bryan. The decree of the chancery court was reversed, the claim of the Bucyrus Company was rejected, and the cause was remanded for further proceedings to be had in accordance with the views expressed in the opinion of this court.

Thereupon Stuart, Bryan and Patterson filed their petition in which they claim, substantially, that it was through their services as attorneys that the claim of the Bucyrus Company was defeated, and the sum for which that company had obtained the decree in the chancery court "was preserved, not only to the clients of the said Bickford & Stuart, but to all of the creditors of the said William R. Trigg Company, subject to proper priorities, which said sum so preserved was, therefore, in fact 'created' for the benefit of the said creditors by the work and labor of your said petitioners, and which sum, except for the said appeal, would have been totally lost to them."

This petition with other papers in the cause was referred to a commissioner, to report what compensation, if any, should be allowed to said petitioners for their services in prosecuting said appeal, and any other matter deemed pertinent by the commissioner or which he may be requested by any party in interest so to report.

The commissioner filed a report in which he allowed the petitioners a fee amounting to 33 1-3 *per cent.* upon the sum of $14,266.67. Exceptions were taken to that report by a number of creditors, who state that they had been continuously represented by counsel, and that it was upon the motion of the receiver that he was authorized and directed to take the necessary steps to procure an appeal from the decree complained of, at the expense of the fund, and that the amount of the fee, as ascertained by the report of the commissioner is excessive, and other grounds of exception which need not be noticed.

This court has had frequent occasion to indicate its views upon the general subject of devoting funds under its control to the payment of services rendered by attorneys.

In *Stoneburner* v. *Motley,* 95 Va. 784, 30 S. E. 364, it was said: "There are cases which justify courts in making allowance for fees to counsel to be paid out of the funds under their control, a power capable of great abuse and one which should be exercised with the most jealous caution and regard to the rights of the litigants. In most cases, it is better to leave those concerned to contract for the services rendered or received. But, while this is true, it is also true that, where parties to a suit, unrepresented by counsel, reap the benefit of services rendered in the progress of a cause, it is right and proper that those who receive the benefit, should be required to make just compensation for it. But we repeat, it is a power which is very capable of being abused and should, therefore, be cautiously exercised, lest thereby the administration of justice be brought into reproach."

The last utterance of this court upon the subject was in

*McCormick* v. *Elsea,* 107 Va. 472, 59 S. E. 411, in which Judge Whittle, speaking for the court, said: "Except in rare instances, the power of a court to require one party to contribute to the fees of counsel of another party must be confined to cases where the plaintiff, suing in behalf of himself and others of the same class, discovers or creates a fund which enures to the common benefit of all; but the discretion vested in the court should never be exercised in a case where the interests of the party whose fund is sought to be charged are antagonistic to the party for whose benefit the suit is prosecuted."

To that statement of the law we may add, that a fee would properly be allowed where the services of counsel had 'preserved' a fund to be shared with those in like interest and unrepresented by counsel; but this court has not as yet required a party represented in a suit by counsel to contribute to the payment of the fees of counsel other than his own engaged in the suit. See also *Roller* v. *Paul,* 106 Va. 214, 55 S. E. 558.

There is nothing in the case of *Howard* v. *First Nat'l Bank,* 2 Va. Dec. 513, 27 S. E. 492, inconsistent with the views here expressed. The opinion in that case states: "It is true that the First National Bank of Charleston was represented by counsel, John M. Glenn, who filed its petition, as above stated, in 1888. The bank came into a suit in which, as the fruits of arduous and protracted litigation, a fund had been created, in which, as a creditor, it had a right to participate. The bank, of course, had a right to select its own counsel, but the only service rendered by that counsel was to prove a demand which could never have been the subject of serious controversy. The duty devolving upon counsel in filing the petition of the bank, and in establishing its position as a creditor of the National Express & Transportation Company, was of the simplest character. The service which required the high order of professional skill had already been rendered in the creation of the fund. Its distribution was free from difficulty. When, therefore, the Bank of Charleston came into the cause by petition,

it not only found a fund ready for distribution, but it found its right protected against the statute of limitations, which would have otherwise been fatal, by the labor of those who had filed the original bill, and conducted the litigation down to that time. In common fairness, it ought to be required to pay its just proportion of the compensation to which those who rendered to it these important services are entitled."

Coming to the facts of this case, we find that the Trigg Company and the receiver were represented by counsel; that after the adverse decision in the chancery court, they united with petitioning counsel in securing an order from the court, directing the receiver to appeal from the decree complained of, at the expense of the fund in the cause. That appeal was taken. The gentlemen named were at all times counsel for the appellants, were prepared to argue the case in this court, and that they did not do so was the result of an arrangement entered into among the several attorneys in the case.

We cannot enter into a discussion or comparison of the relative merits of counsel practicing at this bar. It would be an invidious task were we to undertake it. There is no standard by which we could reach a just decision. They are, so far as we know, all quite capable of aiding the court in arriving at a correct conclusion. The result of the conference among themselves might as well have resulted in the selection of Messrs. Leake and Gordon to argue the case at the bar of this court, as the learned gentlemen who so ably and successfully presented it. But as the case appears to us, it is one in which every party in interest was represented by counsel of his own selection, who must look to their respective clients for compensation, and it is not a case in which the court should appropriate funds as fees to counsel, upon the ground that they had created, discovered or preserved the fund under its control.

Counsel argued earnestly that the appeal to this court was the institution of a new suit. We cannot agree with that view, but shall not discuss it, because even though it were regarded

as a new suit; counsel for the receiver were here, as we have already said, ready and able to support the appeal which they had been directed by a decree of the chancery court to prosecute.

We are of opinion that there is no error in the decree complained of and that it should be affirmed.

*Affirmed.*